David R. Williams, Esq.
PEARSON BUTLER
1802 South Jordan Parkway
South Jordan, UT 84095
(801) 683-5813
david@pearsonbutler.com

Jeffrey A. Bronster, Esq.
*pro hac vice*
17 Wendell Place
Fairview, NJ 07022
(201) 945-2566
jbronster@bronsterlaw.com

*Attorneys for Defendant*

___

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

___

| | | |
|---|---|---|
| PRIME INSURANCE COMPANY, | : | **DEFENDANT'S OPPOSITION TO** |
| | : | **SUMMARY JUDGMENT MOTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | **Oral argument requested** |
| | : | |
| XXXV CLUB, | : | Case No.: 2:23-cv-00206-DAK-JCB |
| | : | |
| Defendant. | : | Judge Dale A. Kimball |

___

# **INTRODUCTION**

This declaratory judgment action arises out of a New Jersey lawsuit against XXXV Club ("35 Club"), captioned *Gee v. Seixeiro, et al.* According to the Third Amended Complaint ("TAC"), Seixeiro was driving drunk when he crashed into the Gee's car. Seixeiro allegedly drank that evening at a succession of bars, and ended

up at 35 Club. The TAC does *not* allege that Seixeiro was served alcohol at the club; and indeed, pursuant to New Jersey law, as an all-nude establishment, 35 Club could not serve alcohol.

Seixeiro allegedly entered the club, then left to smoke a cigarette. The club's bouncers refused to let him back in "due to his intoxication." Next, Seixeiro allegedly fell asleep in his truck, in 35 Club's parking lot. The bouncers woke him up and intimidated him into driving away, despite his intoxicated condition. According to the TAC, allowing and/or compelling an intoxicated person to drive was negligent on the part of 35 Club, and it is accordingly liable for that negligence.

35 Club is insured by plaintiff ("Prime"), and filed a claim. Prime provided defense counsel, but is now seeking a declaration that it is not obligated to do so, and is not obligated to cover any judgment. It invokes an exclusion in the policy which states that it will not cover a claim, will not pay damages, and will not owe a duty of defense for "the use of alcohol, narcotics, intoxicants, or illegal drugs."[1]

There is only one issue in this case: the interpretation of the exclusion for "the use of alcohol." Prime interprets it as broadly as possible, such that if alcohol is "involved" in any way, directly or indirectly, whether such alcohol was served by the

---

[1] The same provision would also purportedly exclude coverage if 35 Club "caused or contributed" to the intoxication, furnished alcohol to a minor or intoxicated person, or violated any liquor-related law. However, the TAC does not allege any of these factors.

insured or not, then there is no coverage or duty to defend. As will be discussed later in this brief, that would lead to absurd results in any number of cases. Any reasonable insured reading the language of the exclusion would believe that it covered a claim in which the insured itself had nothing to do with providing alcohol to anyone. Prime's interpretation of the policy is unreasonable *per se.* Moreover, even if the interpretation is *arguably* reasonable, it is but one of multiple reasonable interpretations. Under the case law, 35 Club is entitled to the benefit of the reasonable interpretation that is most favorable to it as the insured.

### RESPONSE TO THE PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The defendant disputes the following statements of material fact:

3. 35 Club in not owned by Anthony Acciardi, but rather by his wife Doreen Acciardi. However, this does not have any effect on the arguments made on this motion by the respective parties.

### POINT I

### DEFENDANT IS ENTITLED TO A DEFENSE AND COVERAGE

Prime states in a conclusory manner that its interpretation is indisputably the correct and reasonable interpretation of the policy language, and it thereby avoids any discussion of the law of adhesion contracts. But that discussion is key to the motion.

A contractual provision is ambiguous when there is more than one reasonable interpretation of it. In reading the policy the standard is not how an attorney would understand it, or how an insurance company would understand it. The standard is how the language would be construed by "a person of ordinary intelligence and understanding . . . in accordance with the usual and natural meaning of the words, and in light of the existing circumstances, including the purpose of the policy." *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F.Supp.2d 1226, 1234 (D. Utah 2013), *quoting Lopez v. United Auto. Ins. Co.*, 274 P.3d 897 2012).

In the case of a typical contract, when there is more than one reasonable interpretation - - *i.e.* when the policy is ambiguous - - courts "generally consider extrinsic evidence in an effort to resolve the ambiguity." *Cincinnati, supra*, fn. 15, *quoting Fire Ins. Exchange v. Oltmanns*, 285 P.3d ___ (Utah 2012). But that is not the case with documents such as insurance policies, which are contracts of adhesion.

A contract of adhesion is defined as one that is prepared in a standardized form and presented on a take-it-or-leave-it basis to one occupying a disadvantageous bargaining position. *doTERRA Int'l LLC v. Kruger*, 491 P.3d 939, 946 (Utah 2021). Like virtually every other state, Utah has held that an insurance policy "is a classic example of an adhesion contract." *United States Fidelity & Guar. Co. v. Sandt,* 1993 854 P.2d 519, 521-22 (Utah 1993).

The rule for resolving ambiguity in the usual case - - considering extrinsic evidence - - does not apply to a contract of adhesion, as explained in the *Cincinnati* case (*supra*):

> But "there is a different protocol in the case of insurance and surety contracts, where it is seen as appropriate to jump immediately to what is usually viewed as the "last resort," "tie-breaker" rule of interpretation, namely construction against the drafter." Id.
>
> "This is due to the probable dearth of relevant extrinsic evidence in these contexts," because insurance contracts "'are ordinarily not preceded by discussion or negotiation of specific terms and, thus, absent meaningful extrinsic evidence as to intent, recourse must be had directly to the maxim that ambiguities should be construed against the drafter.'" Id. at ¶ 8 (quoting Wilburn, 748 P.2d at 585 n.2).
>
> As noted above, "construction against the insurer is especially appropriate when an ambiguous term appears in an exclusionary provision because such provisions are 'strictly construed against the insurer.'" Id. (quoting Sandt, 854 P.2d at 523).

*Cincinnati*, 921 F.Supp.2d at fn. 15.

The only question, then, if whether or not there is more than one reasonable interpretation of the exclusion for personal injury. For the purpose of this motion Defendant will not debate the reasonableness of Prime's interpretation, because ultimately it is irrelevant. If there is *another* reasonable interpretation, favorable to the insured, that interpretation is dispositive. The alternate interpretation need not be "better" than Prime's for Defendant to receive the benefit of the ambiguity rule; it must simply be reasonable.

As noted above, one of the particular considerations in assessing an ambiguity is "the purpose of the policy." One of 35 Club's purposes in obtaining the policy was clearly to protect itself against liability claims, such as personal injury. The question then becomes, what was the purpose of the *exclusion*? **While there are a number of possible answers to that question, Prime itself has provided the answer**.

At Page 2 of its brief, Prime gives the following explanation:

> Prime issued a commercial liability insurance policy to XXXV Club & Alana inc DBA 35 Club LLC ("the Club"). Because the Club is not permitted to sell alcohol to its patrons, the Prime policy has an exclusion that precludes coverage for claims involving alcohol.

Nothing could be clearer. Because 35 Club was not permitted to serve alcohol, naturally its policy did not include dram shop coverage, which covers an insured who is serving alcohol legally. However, Prime (understandably) wanted to protect itself against liability in case 35 Club served alcohol *illegally*. Without the exclusion, if a patron was illegally served alcohol and then injured himself or someone else, 35 Club's potential liability would have been covered. Under those circumstances, Prime was doing nothing more than being a prudent insurer in protecting itself from the potential *illegal* service of alcohol by the insured. This rationale makes complete sense, and is precisely consistent with Prime saying that it included the exclusion in the policy specifically "because the club is not permitted to sell alcohol . . ."

The defendant asks the Court to consider the following hypotheticals as they apply to Prime's interpretation of the policy:

(1) It is common knowledge that "gentlemen's clubs" sometimes get a rowdy crowd, and that consequently every club has some level of security to protect itself and its customers. In the hypothetical, a club decided to save money by firing all of its security, and the next night a customer who had been drinking alcohol at home earlier came into the club and assaulted a patron. The patron suffers injury and sues the bar for not having adequate security.

The patron's lawsuit is a common negligence claim. The club had a duty to its customers to maintain a safe environment by providing security; it breached that duty by firing the bouncers; hence, it was liable for the patron's injury. But according to Prime, if it found out later that the assaulter had been drinking, albeit somewhere else, before he came to the club, there would be no coverage under the policy, because the claim "involved" alcohol. The defendant submits that no reasonable club owner would have, should have, or even could have somehow read that anomalous outcome into the working of the Prime alcohol exclusion.

(2) Similarly, a patron walks into the club with a gun in his belt in plain view. Although in this hypothetical the club does have bouncers, they choose to ignore the fact that the patron is armed and they let him come in. No alcohol is being served,

either to the armed patron or anyone else. Suddenly the patron takes out the gun a starts shooting. The injured patrons sue the bar for negligent security. It turns out that right before he came into the club, the shooter was sitting in his car a block away having a few beers. Under Prime's interpretation of the policy, there would be no coverage because of the alcohol exclusion.

(3) The club in the hypothetical has a fire and people die. Earlier that day the club had an electrician fix a problem with the electrical system, but didn't even bother to check if the electrician was licensed, which it acknowledges was negligent on its part. The electrician did the wiring wrong, which led to the fire. The estates of the dead patrons sue for negligence, and the insurance company defends under a reservation of rights. In deposition the electrician admits that before he left his house that morning to go to the club he had a few bears. Under Prime's interpretation of the policy, there would be no coverage because of the alcohol exclusion.

There are undoubtedly dozens of other hypotheticals one could come up with to illustrate the point. What they all have in common is that no reasonable insured would be on notice from the exclusion that the fact that alcohol was somehow "involved," even though it had nothing to do with serving or providing the alcohol, could result in a denial of coverage. This would be contrary to the very purpose for

which the insured was purchasing coverage in the first place, and contrary to the reasonable expectations of even a *sophisticated* insured, much less a *typical* insured.

Looking again at the language of the Prime policy, it informs 35 Club that the policy does not cover "Damages on your behalf for any of the following . . . the use of alcohol, narcotics, intoxicants, or illegal drugs." The TAC does not seek damages from 35 Club itself for Seixeiro's use of alcohol. At worst, Gee has alleged that 35 Club's bouncers chased Seixeiro out of the parking lot, and that as a result of the fact that he had apparently been drinking *elsewhere*, he caused an accident. No reasonable insured could anticipate that interpretation of the policy, which viewed in its *best* light to Prime is ambiguous. Accordingly the policy must be interpreted in favor of 35 Club, and summary judgment must be denied.

Respectfully submitted,

/s/ *Jeffrey A. Bronster*

JEFFREY A. BRONSTER

Dated:   July 17, 2024