THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **PRIME INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>vs.<br><br>**XXXV CLUB,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:23CV206 DAK-JCB<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff Prime Insurance Company's ("Prime") Motion for Summary Judgment and on Defendant XXXV Club's ("35 Club") Cross-Motion for Summary Judgment.[1] The court held oral argument on September 19, 2024. At the hearing, Andrew D. Wright represented Prime, and Jeffrey A. Bronster and David R. Williams represented 35 Club. After the hearing, the court took the matter under advisement. Now being fully informed, the court issues the following Memorandum Decision and Order denying Prime's Motion for Summary Judgment and granting 35 Club's Cross-Motion for Summary Judgment.

## BACKGROUND

This declaratory judgment action involves an insurance coverage dispute over whether an alcohol exclusion contained in a commercial liability insurance policy issued by Prime to 35 Club precludes coverage for a wrongful death case involving an intoxicated patron who later caused a fatal motor vehicle accident. According to Prime, 35 Club is not permitted to sell alcohol to its patrons because it is a gentlemen's club that under New Jersey law is prohibited from selling alcohol. The Prime policy therefore contains an exclusion that precludes coverage

---

[1] ECF Nos. 26 & 29, respectively.

1

for claims involving alcohol. The parties agree that material facts of this case are not disputed, and both parties seek summary judgment in their favor.

## UNDISPUTED FACTS

Prime is a surplus lines insurance carrier based in Sandy, Utah. 35 Club retained insurance broker Empire State Brokerage Services, LLC, to procure insurance coverage. Prime issued a commercial liability policy to 35 Club in the form of Policy No. SC21032731 ("the Policy"). Upon receiving the Policy, the owner of 35 Club, Anthony Acciardi, signed a Policy Receipt Form acknowledging that the Policy is a manuscript policy and not a standard insurance policy. That form also encouraged 35 Club to review the Policy in its entirety. Pursuant to the form, 35 Club acknowledged it was accepting the terms and conditions of the Policy. The Policy contains the following relevant Exclusion:

> B.  Exclusions:
>
> This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for, any of the following:
> . . .
>
> 11.  *Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of:*
>
>   a.  Causing or contributing to the intoxication of any person; or
>
>   b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
>   c.  The violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or controlled substances; or
>
>   d.  *The use of alcohol*, narcotics, intoxicants, or illegal drugs.[2]

---

[2] ECF No. 26 at 3-4 (emphasis added to highlight relevant language).

This case arises from a fatal accident that occurred in New Jersey on July 18, 2021. Twenty-year-old Ciara Gee was a passenger in a car driven by her father, Jerry Gee, when a reportedly intoxicated driver, Sergio Seixeiro, collided with the Gees' car, tragically killing Ms. Gee. Her parents filed a wrongful death suit against various night clubs, including 35 Club. The complaint alleges that certain night clubs served alcohol to Mr. Seixeiro while he was visibly intoxicated. After drinking at these night clubs, Mr. Seixeiro went to 35 Club. Mr. Seixeiro has testified that by the time he arrived at 35 Club, he was already feeling intoxicated. For purposes of this motion, there is no allegation that Mr. Seixeiro drank alcohol while at 35 Club.

At some point, Mr. Seixeiro left 35 Club to smoke a cigarette. A security guard then denied him reentry into 35 Club because Mr. Seixeiro had had too much to drink.[3] Mr. Seixeiro then went to his truck, which was parked in 35 Club's parking lot, and he fell asleep.[4] He was awakened by the same security guard who had denied him reentry into 35 Club. The security guard was banging on his window, yelling at him to leave. According to the Third Amended Complaint in the underlying action, the security guard allegedly told Mr. Seixeiro to "get the hell out of [there]" and broke the window and side mirror on Mr. Seixeiro's car.[5] Feeling threatened, Mr. Seixeiro drove away from the parking lot while intoxicated.[6] As he was driving, he collided with the Gees' car, causing the death of Ms. Gee.

Consistent with Utah law requiring insurers to defend under a reservation of rights and seek clarity by way of declaratory judgment actions when questions of coverage exist, Prime undertook defense of 35 Club in the Gee Lawsuit and then filed this action.

---

[3] *Id.* at 5; ECF No. 26-7 at 38-39, 59, 94-95.
[4] *Id.* 38, 59, 68-69.
[5] ECF No. 26-6 at 41; ECF No 26-7 at 38, 59, 68-69.
[6] ECF No. 26-6 at 42.

## DISCUSSION

### A. The Parties' Positions

Prime maintains that there is no coverage under the Policy for the claim arising out of the July 18, 2021, accident because that accident arose from the use of alcohol. And because Prime contends that coverage is precluded, it also argues that it has no duty to defend or indemnify 35 Club for any claims arising out of the July 18, 2021, accident. Prime argues that the claims asserted against 35 Club in the underlying action are based entirely on the allegation that Mr. Seixeiro had been served alcohol and was driving while under the influence, resulting in the fatal accident. In other words, Prime argues, there is no dispute that the allegations against 35 Club arise from "the use of alcohol." Accordingly, it argues, the court should grant summary judgment in favor of Prime by entering a declaration that Prime has no obligation under the policy to defend or indemnify 35 Club with regard to this claim.

On the other hand, 35 Club argues that the claim asserted by the Gee Family is that 35 Club negligently allowed and/or compelled an intoxicated person to drive a vehicle and that 35 Club is accordingly liable for that negligence. It argues that Prime has interpreted the alcohol exclusion too broadly, such that if alcohol is "involved" in any way—directly or indirectly—whether such alcohol was served by the insured or not, then there is no coverage or duty to defend. Such an interpretation, according to 35 Club, would lead to absurd results, and 35 Club argues that this interpretation is unreasonable *per se*. But, according to 35 Club, even if Prime's interpretation is only *arguably* unreasonable, it is one of multiple reasonable interpretations, and under Utah case law, 35 Club is entitled to the benefit of the reasonable interpretation that is most favorable to it as the insured.

B.  **Is the Prime Policy a Contract of Adhesion?**

A contract of adhesion is defined as one that is prepared in a standardized form and presented on a take-it-or-leave-it basis to one occupying a disadvantageous bargaining position.[7] Like virtually every other state, Utah has held that an insurance policy "is a classic example of an adhesion contract."[8]

Prime argues that the policy at issue in this case is not a standard insurance form but rather a surplus lines policy. According to Prime, "[s]urplus lines insurance is typically written through customized 'manuscript policies.' Unlike insurance written through admitted insurers, manuscript policies are customized policies written specifically for certain types of risks. Where an admitted carrier may sell five or six different types of policies, a surplus lines carrier may sell hundreds of different types of policies, each of which can be customized to a specific risk or insured."[9] Prime points out that the policy contains the following language in the "Limits of Liability" section:

> H.  This Policy has been issued to the Insured in response to a request for coverage from the Insured, and its retained broker, if applicable. Various optional insurance has been offered to Insured by Insurer, including different types of insurance and different limits of liability; and Insured and its broker have expressly selected the type and amount of coverage desired. As such, Insured, and its retained broker, if applicable, are solely responsible for determining the type and amount of insurance needed for Insured's operations and the amount of insurance required by any federal or local laws which may apply to Insured's specific operations. . . .[10]

Prime therefore contends that because the policy is a surplus lines policy, it should not be considered to be an adhesion contract. But Prime provided no authority for the proposition that a surplus lines policy is not considered an adhesion contract, and the factual record regarding the

---

[7] *doTERRA Int'l LLC v. Kruger*, 491 P.3d 939, 946 (Utah 2021).
[8] *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 521-22 (Utah 1993).
[9]  ECF No. 32 at 2.
[10] *Id.*

alleged differences between a surplus lines policy and a standard insurance policy is too thin to draw any meaningful distinction. While the court recognizes that the policy is a surplus lines policy that was procured by an independent broker, the court declines to find that it is not a contract of adhesion. In other words, because it is a contract of adhesion, the court will construe the policy "liberally in favor of the insured . . . so as to promote and not defeat the purposes of insurance."[11]

"It follows that ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage" and "provisions that limit or exclude coverage should be strictly construed against the insurer."[12] In strictly construing exclusions, the court gives them effect only when they use "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."[13] "This rule of strict construction is justified by 'the need to afford the insured the protection he or she endeavored to secure by paying premiums.'"[14]

### C. Is the Prime Policy Exclusion at Issue Ambiguous?

A contractual provision is ambiguous when there is more than one reasonable interpretation of it. In reading the policy, the standard is how the language would be construed by "a person of ordinary intelligence and understanding . . . in accordance with the usual and natural

---

[11] *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519, 521–22 (Utah 1993) (internal quotation omitted).
[12] *Id.* at 522–23; *Doctors' Co. v. Drezga,* 2009 UT 60 at ¶ 12, 218 P.3d at 603 (defining ambiguity as a provision that is "capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.").
[13] *Utah Farm Bureau Ins. Co., v. Crook,* 1999 UT 47, ¶ 5, 980 P.2d 685 (citations and internal quotation marks omitted).
[14] *Doctors' Co., v. Drezga*, 2009 UT 60, ¶ 12, 218 P.3d 598, 603 (Utah 2009) (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988)).

meaning of the words, and in light of the existing circumstances, including the purpose of the policy."[15] Of course, courts should not create an ambiguity where none exits.

The question, then, is whether there is more than one reasonable interpretation of the exclusion for personal injury under paragraph 11. The court finds that there is. First, one of the particular considerations in assessing an ambiguity is "the purpose of the policy." 35 Club's purpose in obtaining the policy was to protect itself against liability claims, such as personal injury. The question then becomes, what was the purpose of the exclusion? Prime itself answered this question in its Motion for Summary Judgment:

> Prime issued a commercial liability insurance policy to XXXV Club & Alana inc. DBA 35 Club LLC ("the Club"). *Because the Club is not permitted to sell alcohol to its patrons, the Prime policy has an exclusion that precludes coverage for claims involving alcohol.*[16]

Because 35 Club is not permitted to serve alcohol, its insurance policy did not include dramshop coverage, which covers an insured who is serving alcohol legally. Prime understandably sought to protect itself against liability in the event that 35 Club served alcohol illegally. Without the exclusion, if 35 Club illegally served alcohol to a patron who then injured himself or someone else, 35 Club's potential liability would have been covered. Under those circumstances, a reasonable interpretation of the exclusion is that Prime was acting as a prudent insurer in protecting itself from the potential illegal service of alcohol by the insured.

Moreover, there are additional reasons why the exclusion at issue is ambiguous. As Prime itself argues, numerous courts recognize that policies should not be interpreted in a way that

---

[15] *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1234 (D. Utah 2013) (quoting *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897 (Utah 2012)); *see also Doctors' Co., v. Drezga*, 2009 UT 60, ¶ 12, 218 P.3d 598, 603 (Utah 2009) (internal quotations omitted).
[16] ECF No. 26 at 2 (emphasis added); s*ee also* ECF No. 32 at 8 (Prime agrees that "this Policy was issued, as opposed to dram shop coverage, because the Club was not permitted to sell alcohol on its premises.").

7

would render portions of the policy superfluous or meaningless.[17] If the exclusion were read to be as far-reaching as Prime contends—that it precludes coverage for any personal injury arising from or having anything to do with alcohol, regardless of where or when the alcohol was consumed or who served it—then all the other provisions in the exclusion would be rendered superfluous. There would simply be no need to explicitly set forth subsections "a," "b," or "c" below:

>  11.  Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of:
>
>  a. Causing or contributing to the intoxication of any person; or
>
>  b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
>  c. The violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or controlled substances; or
>
>  d. The use of alcohol, narcotics, intoxicants, or illegal drugs.

A third reason the court finds the exclusion to be reasonably interpreted to provide coverage in the instant situation is that the wording of the various subsections of the exclusion all pertain to the actions of the "Insured," which is 35 Club. In other words, coverage is excluded by reason of *35 Club employees* (a) causing or contributing to the intoxication of any person; or *35 Club employees* (b) furnishing alcohol to a person under the legal drinking age or under the influence; or *35 Club employees* (c) violating any law related to the sale, gift, distribution, or use of alcoholic beverages or controlled substances. It is reasonable to assume that section (d) would be read in a manner parallel to the other subsections, such that coverage is also excluded by reason of *35 Club employees* using alcohol, narcotics, intoxicants, or illegal drugs.

---

[17] *See* ECF No. 32 at 6 (citing cases).

And finally, the court agrees with 35 Club that no reasonable insured would be on notice from the language of the exclusion that the fact that alcohol was somehow "involved" (even though 35 Club had nothing to do with serving or providing the alcohol) would preclude coverage for other alleged negligence, such as compelling an intoxicated driver to leave 35 Club's parking lot. Such an exclusion would be contrary to the very purpose for which the insured purchased coverage in the first place—and contrary to the reasonable interpretation of even a sophisticated insured, much less a typical insured of ordinary intelligence and understanding.

In its Cross-Motion for Summary Judgment, 35 Club set forth the following hypotheticals to demonstrate some possible similar scenarios in which Prime's interpretation of the exclusion would preclude coverage, likely to the surprise of its insured:

(1) It is common knowledge that "gentlemen's clubs" sometimes get a rowdy crowd, and that consequently every club has some level of security to protect itself and its customers. In the hypothetical, a club decides to save money by firing all of its bouncers. The next night a customer who had been drinking alcohol at home comes into the club and assaults a patron. The patron suffers injury and sues the bar for not having adequate security. The patron's lawsuit is a common negligence claim. The club had a duty to its customers to maintain a safe environment by providing security, and it breached that duty by firing the bouncers; hence, it was liable for the patron's injury. But according to Prime, if it found out later that the assaulter had been drinking, albeit somewhere else—before he came to the club—there would be no coverage under the policy, because the claim "involved" alcohol.

(2) A patron walks into a club with a gun in his belt in plain view. The club has bouncers, but the bouncers choose to ignore the fact that the patron is armed, and they let him come in. No alcohol is served, either to the armed patron or anyone else. Suddenly the patron takes out the gun and starts shooting. The injured patrons sue the bar for negligent security. It turns out that right before he came into the club, the shooter was sitting in his car a block away, having a few beers. Under Prime's interpretation of the policy, there would be no coverage because alcohol was involved in the incident.

(3) There is a fire in a club, and people die. Earlier that day, the club had hired an electrician fix a problem with the electrical system, but the club didn't bother to check whether the electrician was licensed, which it acknowledges was negligent on its part. The electrician incorrectly installed some wiring, which led to the fire. The estates of the dead patrons sue for negligence, and the insurance company defends

9

under a reservation of rights. In his deposition, the electrician admits that before he left his house that morning to go to the club, he had a few beers. Under Prime's interpretation of the policy, there would be no coverage because alcohol was involved.[18]

In the instant case, rather than call for an Uber, contact the police, allow Mr. Seixeiro to continue sleeping, or pursue some other remedy, 35 Club's security guard directed Mr. Seixeiro to drive away, knowing that he was intoxicated.

The court finds that the exclusion is fairly susceptible to different interpretations and should therefore be construed in favor of coverage. Moreover, because this provision excludes coverage, it must be strictly construed against the insurer. The language of subsection (d) in paragraph 11 of the Exclusions does not clearly and unmistakably communicate to the insured the specific circumstances under which the expected coverage will not be provided.

Therefore, the alcohol exclusion at issue does not preclude coverage in this case. 35 Club is entitled to a defense and coverage in the event that 35 Club is determined to be liable. Therefore, 35 Club's Motion for Summary Judgment [ECF No. 29] is GRANTED, and Prime's Motion for Summary Judgment [ECF No. 26] is DENIED.

DATED this 13th day of December 2024.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[18] ECF No. 28 at 7-8 (these hypotheticals have been lightly edited for brevity and clarity).